1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TURAN RAMADAN AND PATRICIA
RAMADAN,

             Plaintiffs,

    v.

CITY OF NAPA, PHIL BRUN, MICHAEL
O'BRYON, and Does 1-100,

             Defendants.
_____/

No. C 06-01804 MHP

**<u>MEMORANDUM & ORDER</u>**
**Re: Defendants' Motion for Summary**
**Judgment**

       Plaintiffs Turan Ramadan and Patricia Ramadan filed a complaint against defendants City of

Napa, Phil Brun, Michael O'Bryon and Does 1–100, alleging employment discrimination and

retaliation in violation of Turan Ramadan's rights under state and federal law.  Patricia Ramadan

brings a cause of action for loss of consortium.  Now before the court is defendants' motion for

summary judgment.  The court has considered the parties' arguments fully, and for the reasons set

forth below, the court rules as follows.


<u>BACKGROUND</u>

I.     <u>Factual Background</u>

       Plaintiff Turan Ramadan is currently employed by defendant City of Napa ("City") as a

Water Operations Supervisor.  Plaintiff Patricia Ramadan is his spouse.  Defendant Phil Brun is

currently employed by the City of Napa as the General Manager of the City's Water Division and is

Turan Ramadan's immediate supervisor.  Defendant Michael O'Bryon is the Director of the City's

1    Public Works Department and is defendant Brun's immediate supervisor.

2    The instant action arises out of Turan Ramadan's employment with the City.  He alleges that

3    he suffered from various forms of discrimination at the hands of defendants Brun, O'Bryon, and the

4    City.  Turan Ramadan seeks injunctive relief, damages and attorneys' fees.  He alleges violations of

5    his constitutional rights including equal protection, due process, freedom from discrimination on the

6    basis of race, national origin and religion and freedom of speech as well as certain rights under the

7    International Convention on the Elimination of All Forms of Racial Discrimination.  Turan Ramadan

8    also alleges causes of action under federal and state law for employment discrimination.  He timely

9    filed charges of discrimination with the EEOC and with the California Department of Fair

10   Employment of Housing.  Both agencies issued right-to-sue notices to Turan Ramadan.  Finally, he

11   complains of retaliation for making protected disclosure pursuant to California Labor Code sections

12   1102.5(b),(f) and for intentional and negligent infliction of emotional distress.  Patricia Ramadan

13   brings a claim for loss of consortium as a consequence of defendants' alleged conduct.

14

15        A.        Allegations of Discriminatory Treatment

16   Ramadan alleges discrimination under state and federal law based on his protected status as a

17   Turkish Muslim.  Ramadan admits that he has never heard either Brun or O'Bryon make any

18   comments about his national origin or religion.  UF ¶¶ 45–48.  Also, prior to the filing of this

19   lawsuit, Ramadan had not personally heard any City employee make any comment about his

20   national origin or religion or told anyone in City management that any other City employee had

21   made any comment to him regarding his national origin or religion.  UF ¶¶ 49–51. On several

22   occasions, however, Brun yelled at and/or derided Ramadan, including: (1) Brun yelling at Ramadan

23   because Ramadan denied an employee overtime; (2) mentioning that Ramadan's command of

24   English is not good; (3) telling Ramadan that he was sick and tired of Ramadan not taking initiative;

25   (4) yelling at Ramadan regarding an employee's report of a caustic odor; (5) getting angry with

26   Ramadan at a staff meeting and telling Ramadan to read the report; (6) telling Ramadan to "shut

27   up"; (7) calling Ramadan "narrow minded" and "stupid"; and (8) at a meeting with several

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

employees telling Ramadan "you're fucking yourself" in response to Ramadan telling Brun, "you're fucking me."  UF ¶¶ 58(a)–(h).  Also, Ramadan alleges that Brun treated him with disrespect and undermined his authority on several occasions from October 2003 to the present.  See, e.g., UF ¶¶ 59(b) (Brun refused to take Ramadan's advice about upgrades to the treatment plant); UF ¶¶ 60(a)–(e) (Brun allowed a water treatment operator to contradict Ramadan's instructions regarding chemical dose levels).  However, Ramadan admits that Brun has disagreed with or not followed recommendations made by two of Brun's other subordinates and that Brun has also raised his voice to one of them as well.  UF ¶¶ 67–72. Finally, although Ramadan does not claim that his supervisors used racially discriminatory language, he alleges that his subordinates engaged in discriminatory conduct against him on several occasions by using racially derogatory names and other insults.  See Pls.' Br. at 5 (co-workers have called Ramadan "Osama Bin Laden", "raghead", and other racial epithets).

In July 2004 Turan Ramadan met with the City Personnel Director to discuss his feeling that he was harassed regarding an incident where his subordinate yelled at him and called him incompetent.  UF ¶ 74.  Also in July 2004, Ramadan met with O'Bryon and told O'Bryon that Brun was discriminating against Ramadan by not treating Ramadan the same as Brun's other employees.  UF ¶ 75.  Ramadan then filed a complaint with the city in January 2005, based on allegations of Brun's discriminatory conduct.  UF ¶ 76.  The City hired an independent investigator to look into Ramadan's complaint.  UF ¶ 77.  The investigator found that Ramadan's complaints were not substantiated and were in response to Brun "requiring that Ramadan be held accountable and perform at the level of a supervisor."  UF ¶ 78.

B.      Ramadan's Disciplinary History

Ramadan's discrimination claims are based on actions taken against him by Brun and O'Bryon, including two counseling memoranda, a written reprimand, and a one-day suspension without pay.  The parties agree that counseling memoranda are not disciplinary actions, do not become part of an employee's personnel file, and do not result in a loss of pay or benefits.  UF

¶¶ 7–8.  In November 2003 Brun issued Ramadan a counseling memorandum based on the following violations: (1) that Ramadan failed to accurately account for time off from work on his time sheet, (2) that he failed to advise his supervisor and a member of his staff in advance of taking time off, and (3) that he failed to submit blue slips for sick leave.  UF ¶¶ 10(a)–(c).  In January 2005 Brun issued Ramadan a second counseling memorandum for the following violations: (1) that Ramadan failed to correct a vent pipe problem until nine months after the allotted due date, (2) that he exceeded his spending limit of $2,000 by authorizing a $16,000 parking lot project, (3) that he did not investigate or report to the General Manager a sexual harassment complaint made by one of his subordinates, and (4) that he did not adequately prepare employee evaluations.  UF ¶¶ 11–28.  In April 2005 the City issued a written reprimand to Ramadan for taking a gallon of motor oil for personal use in violation of City policy in the presence of one of his subordinates.  UF ¶¶ 29–37.  Finally, in November 2005 Ramadan was suspended for one day without pay for misreporting 126 additional miles on a reimbursement request.  UF ¶¶ 40–44.  Ramadan explained that the 126 additional miles resulted from his getting lost one day, going off-site for lunch, and pulling off the freeway to get gas.  UF ¶ 41.  Ramadan was informed that he had a right to representation during the disciplinary process and had a right to appeal any final notice of discipline; however, Ramadan did not appear for the disciplinary hearing and did not submit any written documentation in response to the notice of intent to discipline.  UF ¶¶ 53–57.

II.    Procedural History

Plaintiffs filed their first complaint in this action on March 8, 2006.  They filed an amended complaint on April 10, 2006.  Pursuant to Local Rule 16-10, the court held an initial case management conference on July 12, 2006 and a further case management conference on October 3, 2006.  At the October 3, 2006 conference, plaintiffs indicated that they intended to file a motion to amend their complaint.  Accordingly, the court established a briefing schedule pursuant to Federal Rule of Civil Procedure 16(b).  The court ordered that any motion to amend be filed by November 6, 2006.  After plaintiffs filed a second amended complaint and then asked that it be withdrawn, the

4

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  court issued an order on November 13, 2006.  In that order, the court permitted plaintiffs to file a

2  motion to amend within twenty days or "live with the complaint that is currently on file, namely the

3  amended complaint filed on April 10, 2006."  Order of Nov. 13, 2006 at 2.  No such motion was

4  filed.  On May 22, 2007 the court denied plaintiffs' motion to amend their complaint.  However, the

5  court indicated it would allow into evidence the new events alleged in the proposed amended

6  complaint for the purpose of showing intent or for other permissible purposes.  Defendants have

7  conducted all permitted discovery and now ask that the court grant them summary judgment on all

8  of plaintiffs' claims.

9

10  LEGAL STANDARD

11      Summary judgment is proper when the pleadings, discovery and affidavits show that there is

12  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

13  matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

14  case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material

15  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

16  nonmoving party.  Id.  The moving party for summary judgment bears the burden of identifying

17  those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine

18  issue of material fact.  See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for

19  which the opposing party will have the burden of proof at trial, the moving party need only point out

20  "that there is an absence of evidence to support the nonmoving party's case."  Id.

21      Once the moving party meets its initial burden, the nonmoving party must go beyond the

22  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

23  genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

24  party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

25  Cir. 1994).  Nor is it sufficient for the opposing party simply to raise issues as to the credibility of

26  the moving party's evidence.  See National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95,

27  97 (9th Cir. 1983).  If the nonmoving party fails to show that there is a genuine issue for trial, "the

28

5

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    moving party is entitled to judgment as a matter of law." <u>Celotex Corp.</u>, 477 U.S. at 323.

2         On motion for summary judgment, the court does not make credibility determinations, for

3    "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

4    functions, not those of a judge." <u>Liberty Lobby</u>, 477 U.S. at 249.  Inferences to be drawn from the

5    facts must be viewed in the light most favorable to the party opposing the motion.  <u>See</u> <u>Masson v.</u>

6    <u>New Yorker Magazine</u>, 501 U.S. 496, 520 (1991).

7

8    <u>DISCUSSION</u>

9         Defendants move for summary judgment on plaintiffs' disparate treatment and retaliation

10   claims under Title VII and the Fair Employment and Housing Act ("FEHA") on the grounds that

11   Turan Ramadan has not suffered an adverse employment action, or in the alternative, that defendants

12   have articulated a legitimate, nondiscriminatory reason for their actions and plaintiffs have not made

13   a showing that the actions were a pretext for discrimination.  Defendants also contend that they are

14   entitled to summary judgment on plaintiffs' hostile work environment claims under Title VII and

15   FEHA on the grounds that defendants' conduct did not, as a matter of law, rise to the level of a

16   pattern of ongoing and persistent harassment severe enough to alter the conditions of employment,

17   and that plaintiffs failed to allege that defendants were actually or constructively aware of

18   harassment by Ramadan's subordinates.  Next, defendants move for summary judgment on

19   plaintiffs' due process claim, arguing that plaintiffs have not articulated a deprivation of a

20   constitutionally protected liberty or property interest.  Further, defendants move for summary

21   judgment on plaintiffs treaty and First Amendment claims, arguing that plaintiffs have no right of

22   action for violation of the treaty and that plaintiffs' First Amendment claims are time-barred, or in

23   the alternative, fail to allege protected speech.  Finally, defendants argue that plaintiffs' tort and

24   whistle-blower claims fail on summary judgment because plaintiffs failed to comply with the

25   California Government Tort Claims Act.  The court will consider each of these arguments in turn.

26

27   I.      <u>Disparate Treatment under Title VII and FEHA Claims</u>

28

6

1   To establish a prima facie case on a disparate treatment theory under Title VII and its state

2   law counterpart FEHA, a plaintiff must show: (1) that the plaintiff belongs to a class of persons

3   protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the

4   plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the

5   plaintiff differently than a similarly situated employee who does not belong to the same protected

6   class as the plaintiff. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006);

7   See Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 355 (2000) (articulating essentially the same prima

8   facie case used for Title VII purposes). If the plaintiff establishes a prima facie case, a presumption

9   of discrimination is created, and the burden shifts to the defendant to articulate a legitimate,

10  nondiscriminatory reason for the challenged employment action. St. Mary's Honor Ctr. v. Hicks,

11  509 U.S. 502, 506–07 (1993). If the defendant articulates such a reason, the burden shifts back to

12  the plaintiff to offer proof that the employer's legitimate, nondiscriminatory reason is a pretext for

13  racial discrimination. Cornwell, 439 F.3d at 1028; McGinest v. GTE Serv. Corp., 360 F.3d 1103,

14  1121 (9th Cir. 2004).

15      Defendants contend that Turan Ramadan has not suffered an adverse employment action, or

16  in the alternative, that defendants have articulated a legitimate, nondiscriminatory reason for their

17  actions and plaintiffs have not made a showing that the actions were a pretext for discrimination.

18

19      A.      Adverse Employment Action

20      Plaintiffs base their Title VII and FEHA claims on the following actions: (1) two counseling

21  memoranda from November 2003 and January 2005; (2) a written reprimand from April 2005; and

22  (3) a one-day suspension without pay on November 2, 2005. An adverse employment action must

23  constitute a tangible job detriment in order to be actionable under Title VII. Burlington Indus., Inc.

24  v. Ellerth, 524 U.S. 742, 768 (1998). Requiring an employer's action to rise to the level of tangible

25  harm separates significant from trivial harms. See Burlington N. & Santa Fe Ry. Co. v. White, ___

26  U.S. ___, 126 S.Ct. 2405, 2415 (2006) ("Title VII, we have said, does not set forth 'a general

27  civility code for the American workplace.'" (quoting Oncale v. Sundower Offshore Servs., Inc., 523

28

7

U.S. 75, 80 (1998)).  California courts similarly define adverse employment action under FEHA as requiring that the employer's action materially affect the terms and conditions of employment.  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1036 (2005).

Defendants' counseling memoranda and written reprimand do not, as a matter of law, meet either the federal or state standard for adverse employment action.  Plaintiffs admit that a counseling memorandum is not disciplinary, does not go into an employee's personnel file, and does not result in a loss of pay or benefits.  UF ¶¶ 7–8.  Similarly, plaintiffs do not allege that a written reprimand results in a loss of pay or benefits, affects the terms and conditions of Ramadan's employment, or results in any other detriment that rises to the level of tangible employment action.  Burlington Indus., 524 U.S. at 761.  Unlike the counseling memoranda and written reprimand, however, Ramadan's one-day suspension without pay meets both federal and state standards for adverse action.  Depriving an employee of pay, for any period of time, materially affects the terms and conditions of employment.  See id. at 762 ("A tangible employment action in most cases inflicts direct economic harm.").  Plaintiffs have therefore stated a prima facie case under Title VII and FEHA as to the one-day suspension but not as to the counseling memoranda or the written reprimand.

B.    Nondiscriminatory Purpose

Once plaintiff has stated a prima facie case for discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions.  St. Mary's Honor Ctr v. Hicks, 509 U.S. at 506–07.  Defendants state that Ramadan was suspended for submitting a mileage reimbursement with 126 misreported miles.[1]  Ramadan was given an opportunity to respond orally or in writing, and he was informed that he had a right to representation during the disciplinary process.  UF ¶ 53.  However, Ramadan did not appear for his hearing or submit any written documentation in response to the notice of intent to discipline him.  UF ¶ 57.  Thus, even though Ramadan attempts to explain that the extra mileage resulted from getting lost one day, going off-site for lunch, and pulling off the freeway to get gas, defendants have articulated a legitimate,

1   nondiscriminatory purpose for their one-day suspension of Mr.  Ramadan for misreporting his

2   mileage.

3

4           C.      Pretext

5           In order to create a genuine issue of material fact on whether defendants' legitimate,

6   nondiscriminatory reason for its action is a pretext for discrimination, plaintiffs must offer specific

7   and substantial evidence that the employer's proffered explanation is unworthy of credence.  Texas

8   Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Cornwell, 439 F.3d at 1029.

9   Summary judgment is appropriate where plaintiff produces no facts that, if believed, would show

10  pretext, even though plaintiff may have established a minimal prima facie case.  Wallis v. J.R.

11  Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994).  Accordingly, a plaintiff may not merely question an

12  employer's credibility or rely on subjective personal judgments as to the nature of the employer's

13  action. Id.; Cornwell, 439 F.3d at 1029.

14          Plaintiffs advance four arguments attempting to show evidence that defendants had a

15  discriminatory motive in taking action against Ramadan: (1) that defendants' disciplinary actions

16  were overreactions to Ramadan's policy violations; (2) that Ramadan's co-workers and subordinates

17  made racially derogatory statements towards him, which should be imputed to Brun, O'Bryon, and

18  the City; (3) that Brun and O'Bryon subjected Ramadan to abusive language; and (4) that Brun and

19  O'Bryon referred bribery allegations made by Ramadan's subordinate against Ramadan to the police

20  and did not discipline the subordinate when the police dismissed the allegations.

21          Plaintiffs do not dispute the underlying facts on which the disciplinary actions were based or

22  provide any evidence that the actions were racially motivated.  Rather, plaintiffs offer their

23  subjective characterization of violations of city policy as "minor mistakes" and the defendants'

24  responses as "serious trumped-up charges."  Pls.' Opp'n at 7.  Similarly, plaintiffs do not dispute

25  that taking motor oil for personal use is a violation of policy but instead state that defendants'

26  reprimand was an overreaction because Ramadan's offense was for "borrowing" and his punishment

27  was for "theft."  Pls.' Opp'n at 8. Relying solely on subjective characterizations without more is not

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    sufficient to demonstrate pretext.  Wallis, 26 F.3d at 890; See also Schuler v. Chronicle Broad. Co.,

2    Inc., 793 F.2d 1010, 1011 (9th Cir. 1986) (holding that an employee must do more than establish a

3    prima facie case and question an employer's credibility in order to withstand a motion for summary

4    judgment).

5         Next, plaintiffs attempt to impute the crass, racist statements of Ramadan's subordinates to

6    Brun, O'Bryon, and the City.  Although racist statements made by Brun and O'Bryon could create a

7    genuine issue of material fact, statements made by subordinates do not, unless Brun and O'Bryon

8    were aware or should have been aware of the statements and failed to take reasonable efforts to stop

9    them.  Burlington Indus., 524 U.S. at 768 (holding that "the employer is liable only for negligence:

10   that is, only if the employer knew, or in the exercise of reasonable care should have known, about

11   the harassment and failed to take remedial action.").  Ramadan admits that he has never heard Brun

12   or O'Bryon make any comment about Ramadan's national origin or religion, and that prior to filing

13   this lawsuit, he did not tell anyone in City management that any other City employee referred to him

14   in a derogatory manner with respect to his race, color, ancestry, national origin or religion.  UF ¶¶

15   45–51.  Although Ramadan met with the City Personnel Director in July 2004 to discuss an incident

16   in which one of his subordinates, Kruse, yelled at him and called him incompetent, at that time

17   Ramadan had no knowledge of any statements containing racially derogatory language.  UF ¶ 74.

18   Plaintiffs do not advance any argument or set forth any evidence that Brun, O'Bryon, or the City

19   knew or should have known about any racially derogatory statements being made by Ramadan's

20   subordinates; therefore, such statements cannot be imputed to defendants in determining whether

21   their actions were pretext for discrimination.  Burlington Indus., 524 U.S. at 769.

22        Similarly, plaintiffs' assertions regarding Brun's abusive statements and disrespectful

23   behavior towards Ramadan consist of conclusory statements and Ramadan's subjective judgments

24   that they are related to Ramadan's race or national origin.  Brun admits to yelling at and/or deriding

25   Ramadan on several occasions, including telling Ramadan to "shut up", calling Ramadan "narrow-

26   minded" and "stupid", and also refusing to take Ramadan's advice about water treatment issues.  UF

27   ¶¶ 58–59.  However, plaintiffs have not offered any evidence that Brun's statements and

28

10

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    disrespectful conduct were motivated by a discriminatory purpose.  Indeed, Ramadan has admitted

2    that he does not know why he believes that Brun is discriminating against him, stating that he

3    believes so "because it's like drinking water: When you're drinking water, you know that you're

4    drinking water."  UF ¶ 52(b) (quoting Ramadan Dep. at 145:9–147:1).  Furthermore, Brun has

5    disagreed with or not followed other employees' recommendations, and he has raised his voice to

6    other employees as well.  UF ¶¶ 68–72.  The protections of Title VII and FEHA do not extend to

7    every employee who has been berated by an employer; rather, the employee must affirmatively show

8    that this employer is abusive because of the employee's status as a member of a protected class.

9    Cornwell, 439 F.3d at 1028.  Plaintiffs again fail to demonstrate pretext because they have not

10   shown any relationship between Brun's conduct and Ramadan's protected status.

11          Finally, plaintiffs fail in their attempt to show evidence of pretext where Brun and O'Bryon

12   referred to the police bribery allegations made against Ramadan by one of his co-workers and then

13   did not discipline the co-worker when the police dismissed the allegations. Again, plaintiffs'

14   characterizations of the allegations as having "utterly no basis" and being "false accusations" do not

15   make up for a failure to provide evidence of a discriminatory motive in the form of facts that, if

16   believed, would show pretext.  Wallis, 26 F.3d at 890.

17          Because plaintiffs have failed to provide any evidence that would have created a genuine

18   issue of material fact and have instead relied solely on conclusory statements and subjective

19   personal judgments, summary judgment on plaintiffs' Title VII and FEHA disparate treatment

20   claims is appropriate.  Additionally, it appears that Ramadan is also claiming a violation of equal

21   protection under the Fourteenth Amendment based on the same theory as his Title VII and FEHA

22   claims.  To the extent that Ramadan's equal protection claim arises out of the same theory as his

23   Title VII and FEHA discrimination claims, his equal protection claim also fails on summary

24   judgment.

25

26   II.    Hostile Work Environment Claim

27          A plaintiff may sustain a claim under Title VII and FEHA based on a hostile work

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

environment theory by establishing that the employer has subjected plaintiff to a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment." Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 871 (9th Cir. 2001); Guz, 24 Cal. 4th at 354.  In order to make such a showing, a plaintiff must establish that a reasonable person would find the work environment to be hostile, that the plaintiff subjectively perceived it to be hostile and that there is a nexus between the harassment by the employer and the plaintiff's protected status.  Onacle v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998); Nichols, 256 F.3d at 871.  The court considers whether a reasonable person would find the work environment to be hostile in light of all the circumstances, including the frequency of the employer's discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance.  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001).  Although employers are liable for discriminatory conduct of those in a supervisory role, where the harassment originates from plaintiff's co-workers or subordinates, an employer is not liable under a hostile work environment theory unless the employer knows or should know of the harassment and fails to take adequate remedial measures in order to end the harassment.  Burlington Indus., 524 U.S. at 769; Nichols, 256 F.3d at 875 (holding that once an employer knows or should know of co-worker harassment, a remedial obligation kicks in) (quotation omitted).

Defendants move for summary judgment on the grounds that defendants' conduct did not, as a matter of law, rise to the level of a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment, and that plaintiffs failed to allege that defendants were actually or constructively aware of harassment by Ramadan's subordinates.

A.    Brun and O'Bryon's Conduct

As discussed above, plaintiffs allege that Brun, O'Bryon, and the City discriminated against Ramadan by yelling at Ramadan, undermining him by not taking his suggestions, and failing to investigate his claims of harassment.  To survive a motion for summary judgment on a hostile work environment claim under Title VII and FEHA, Ramadan must provide evidence of a nexus between

UNITED STATES DISTRICT COURT
For the Northern District of California

1  defendants' conduct and Ramadan's status as a member of a protected class.  Nichols, 256 F.3d at

2  872; Guz, 24 Cal. 4th at 354.  Ramadan admits that neither Brun's nor O'Bryon's comments toward

3  him contained any references to Ramadan's race or national origin and that Brun has treated other

4  employees similarly.  UF ¶¶ 45–50, 67–71.  Furthermore, when Ramadan complained of

5  discriminatory conduct by Brun, the City hired an independent investigator to investigate Ramadan's

6  complaint.  UF ¶ 77.  The investigator issued a report concluding that Ramadan's complaints of

7  discrimination were not substantiated.  UF ¶ 78.  Ramadan has failed to present any evidence of a

8  connection between the conduct of Brun, O'Bryon, and the City and his protected status, and thus

9  fails to establish a genuine issue of material fact on whether his supervisors created a hostile work

10  environment.

12        B.      Harassment by Subordinates

13        Plaintiffs argue that the court should consider racist statements made by Ramadan's

14  subordinates in determining whether plaintiffs have raised a genuine issue of material fact on their

15  hostile work environment theory.  However, consideration of all of the circumstances in a hostile

16  work environment claim is not grounds to conflate the racist statements of subordinates with the

17  non-racist statements of supervisors.  In order to impute the racist statements of subordinates onto

18  Ramadan's supervisors, plaintiffs must provide evidence that Ramadan's supervisors knew or should

19  have known that Ramadan's subordinates were making such statements, and that the supervisors

20  failed to make reasonable efforts to prevent the harassment from occurring.  Burlington Indus., 524

21  U.S. at 769; Nichols, 256 F.3d at 875.

22        Ramadan admits that prior to filing this lawsuit, he never told anyone in City management

23  that any other city employee referred to him in a derogatory manner with respect to his race or

24  national origin.  UF ¶ 8.  Although Ramadan did file complaints with the City on January 26, 2005,

25  and December 9, 2005, the complaints were filed against Brun and O'Bryon, not Ramadan's

26  subordinates, and did not allege the use of racial epithets.  UF ¶¶ 76–81.  Plaintiffs provide no

27  evidence that Brun or O'Bryon were aware or should have been aware of Ramadan's subordinates

28

13

1   making racially derogatory remarks.  Instead, plaintiffs rely on conclusory allegations and subjective

2   characterizations, such as that Ramadan works in a "red neck culture apparently rooted in a

3   xenophobia [sic] attitude to those who are not like them."  Pls.' Br. at 2.  Even if such an allegation

4   were proven, it would not by itself show that Brun and O'Bryon were actually or constructively

5   aware of racial harassment in the workplace.

6       Because plaintiffs failed to provide evidence that Brun or O'Bryon's conduct towards

7   Ramadan was connected to Ramadan's protected status and also failed to show that Ramadan's

8   supervisors knew or should have known of the discriminatory conduct of Ramadan's subordinates,

9   defendants are entitled to judgment as a matter of law on plaintiffs' Title VII and FEHA hostile

10  work environment claims.

11

12  III.    Retaliation under Title VII and FEHA

13      In order to establish a prima facie case under Title VII or FEHA, a plaintiff must show: (1)

14  that he was engaged in a protected activity; (2) that he suffered an adverse employment action; and

15  (3) a causal link between the protected activity and the adverse employment action.  Cornwell, 439

16  F.3d at 1034–35; Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002) (adopting the

17  federal standard for FEHA).  Once plaintiff establishes a prima facie case of retaliation, the same

18  burden-shifting analysis as in disparate treatment actions applies.  Cornwell, 439 F.3d at 1035.

19      As the court has determined previously, the counseling memo and the written reprimand fail

20  as a matter of law to rise to the level of adverse employment action.  Furthermore, defendants have

21  articulated a legitimate, nondiscriminatory reason for Ramadan's one-day suspension.  Plaintiffs'

22  only additional argument for concluding that defendants' actions were pretext for retaliation is their

23  proximity in time to Ramadan's complaints against Brun and O'Bryon.  However, the timing of

24  defendants' actions cannot, by itself, establish pretext.  Hashimoto v. Dalton, 118 F.3d 671, 680 (9th

25  Cir. 1997) (stating that "[a]lthough the timing of these events suffices to establish a minimal prima

26  facie case of retaliation, it does nothing to refute the government's proffered legitimate reasons for

27  disciplining Hashimoto").  Thus, because plaintiffs have not offered any support beyond proximity

28

14

in time to meet their burden of showing pretext, defendants are entitled to judgment as a matter of law on plaintiffs' retaliation claim under Title VII and FEHA.

UNITED STATES DISTRICT COURT
For the Northern District of California

IV.    Due Process Claim

In order to sustain a due process claim, a plaintiff must prove (1) a property or liberty interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) a lack of required process.  Ulrich v. City and County of San Francisco, 308 F.3d 968, 974 (9th Cir. 2002).  To have a property interest in a given employment benefit, a plaintiff must have legitimate claim of entitlement to the benefit.  Board Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972).  A plaintiff's liberty interest may be implicated in the context of employment if the employee is terminated and the employer publicizes a charge that calls into question the employee's good name, reputation, honor, or integrity.  Roth, 408 U.S. at 573.  Harm to a plaintiff's reputation, without more, does not constitute a liberty interest under the Fourteenth Amendment.  Paul v. Davis, 424 U.S. 693, 712 (1976).  For the deprivation of a property or liberty interest to be actionable, plaintiff must demonstrate that he was not afforded an opportunity to refute the charge.  Roth, 408 U.S. at 573.

Plaintiffs in the instant action have not articulated a deprivation of a constitutionally protected liberty or property interest.  Plaintiffs cannot support a due process claim based on a liberty interest because Ramadan continues to work for the City of Napa, and plaintiffs have not alleged that the City publicized the subject of any disciplinary actions defendants have taken against Ramadan.  Roth, 408 U.S. at 573.  Ramadan's only potential argument for a deprivation of a protected property interest arises out of his one-day suspension, because he had a legitimate claim of entitlement to that day's pay.  Roth, 408 U.S. at 577.  Although Ramadan may have had a constitutionally protected property interest in his one day's lost pay as a result of his suspension, Ramadan was provided a clear opportunity to refute the grounds for his suspension.  Ramadan was informed that he could respond orally and/or in writing to the Notice of Intent to discipline him with respect to his suspension and also that he had a right to representation during the disciplinary process and the right to appeal any final notice of discipline.  UF ¶ 55.  Ramadan's attorney wrote a letter to O'Bryon stating that Ramadan would not attend his disciplinary hearing or pursue any of the City's administrative remedies, instead electing to bring an action in federal court.  UF ¶ 57;

UNITED STATES DISTRICT COURT
For the Northern District of California

O'Bryon Dec., Exh. F.  Because Ramadan has not articulated a protected liberty interest and was given ample opportunity to dispute or appeal his suspension and elected not to, defendants are entitled to summary judgment on plaintiffs' due process claim.

V.    Treaty Claim

Plaintiffs concede that the International Convention on the Elimination of All Forms of Racial Discrimination is not a self-executing treaty.  Pls.' Br. at 20–21.  As such, the treaty gives no direct right of action for violation of the treaty unless defendants have also violated a domestic law implementing the treaty.  See Raffington v. Cangemi, 399 F.3d 900, 903 (8th Cir. 2005).  Plaintiffs cite no case or domestic law establishing a private right of action for violation of the treaty, and the court can find none.  Defendants are therefore entitled to summary judgment on plaintiffs' treaty claim.

VI.    First Amendment Claim

Turan Ramadan brings a claim for violation of his rights of free speech under the First Amendment pursuant to 42 U.S.C. section 1983.  He contends that defendants retaliated against him for making statements protected by the First Amendment.  In particular, he claims that the protected statements were those he made about Brun's alleged misconduct with respect to the use of public funds and his water treatment decisions as well as Ramadan's claims of discrimination.

Defendants contend that Ramadan's claims for violation of his First Amendment rights are barred by the statute of limitations.  The applicable statute of limitations for a claim brought pursuant to section 1983 is two years.  See Wilson v. Garcia, 471 U.S. 261 (1985) (holding that the statute of limitations for section 1983 is that for personal injury actions under state law); Cal. Civ. Code Civ. Proc. § 335.1 (two-year statute of limitation period for personal injury actions).  Under this logic, Ramadan's claims of retaliation based on his complaints of Brun's misconduct, which occurred in 2003, are time-barred because Ramadan did not file the complaint until March 2006. See FAC ¶¶ 26-27 (describing October 2003 incident and Ramadan's subsequent complaints about

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Brun's misconduct to O'Bryon).

2        It is significant that Ramadan has alleged a continuing and on-going pattern of retaliation

3   based on his complaints of mismanagement and discrimination.  See FAC ¶¶ 19, 22, 23, 26–27

4   (describing on-going pattern of retaliation).  "[A] systematic policy of discrimination is actionable

5   even if some or all of the events evidencing its inception occurred prior to the limitations period"

6   under the continuing violations doctrine.  Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th

7   Cir. 1982).[2]  In this respect, Ramadan's argument resembles that considered by the Ninth Circuit in

8   DeGrassi v. City of Glendora, 207 F.3d 636, 645 (9th Cir. 2000).  DeGrassi alleged that the

9   defendants had engaged in a "campaign of harassment and intimidation" rather than systemic

10  discrimination.  Id.  In that context, the court observed that the plaintiff must establish that the

11  "alleged discriminatory acts are related closely enough to constitute a continuing violation."  Id.

12  (quoting Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480 (9th Cir.

13  1989)).  DeGrassi failed to establish a series of related wrongful acts, relying instead on conclusory

14  allegations of continuing wrongs.  The court noted that "DeGrassi's allegations may show a

15  long-standing state of animosity and hostility, marked by incidents of personal conflict between her

16  and other City officials, but they do not establish a series of related wrongful acts." DeGrassi, 207

17  F.3d at 645.  Ramadan has similarly failed to show a continuing pattern of related acts; therefore,

18  application of the continuing violations doctrine is inappropriate. Compare DeGrassi, 207 F.3d at

19  645 (rejecting conclusory allegations of continuing wrongs) with FAC ¶ 21 ("On many occasions

20  continuing since January 2003 and intensifying at later dates, Brun used derogatory and sarcastic

21  language, screaming, and shouted insults at Ramadan in the presence of other employees.").

22  Therefore, any claims brought pursuant to section 1983 based on retaliation for protected speech

23  prior to March 2004 are time-barred.

24       For any remaining claims, defendants argue that summary judgment should be granted

25  because Ramadan's complaints were not protected speech.  In determining whether Ramadan's

26  speech was protected, the dispositive question is whether he spoke as a citizen on a matter of public

27  concern.  Garcetti v. Ceballos,126 S.Ct. 1951,1958 (2006).  "If the answer is no, the employee has

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  no First Amendment cause of action based on his [] employer's reaction to the speech." <u>Id.</u>  Like the

2  employee's complaints in <u>Garcetti</u>, Ramadan's complaints about Brun's mismanagement of funds or

3  use of certain chemicals arose as part of his official duties as Water Operations Supervisor.  <u>Id.</u> at

4  1960 ("The significant point is that [relevant speech] was pursuant to [his] official duties.").  Indeed,

5  his complaints arose because he believed that Brun's intervention in his decision to use certain

6  chemicals impaired his ability to perform his job.  Therefore, the court concludes that plaintiff's

7  First Amendment claim fails because the speech pursuant to his official duties is not protected.

8

9  VII.    <u>Tort and Whistle-blower Claims</u>

10       Plaintiffs allege claims for intentional infliction of emotional distress, negligent infliction of

11  emotional distress, loss of consortium, as well as a whistle-blower claim under California Labor

12  Code section 1102.5.  The California Government Tort Claims Act requires plaintiffs to present a

13  written claim to the public entity allegedly responsible for damages before initiating suit on a

14  common law tort.  Cal. Govt. Code § 810, <u>et seq</u>.  The claims-filing requirement of the Tort Claims

15  Act applies to plaintiffs' claims of intentional infliction of emotional distress, negligent infliction of

16  emotional distress, and loss of consortium.  <u>Loehr v. Ventura Cmty. Coll. Dist.</u>, 147 Cal. App. 3d

17  1071, 1079 (1983) (requiring "as a condition precedent to bringing suit for 'money or damages'

18  against a local public entity, the timely presentation to the defendant of a written claim").  The

19  claims-filing requirement also applies to statutory whistle-blower claims under California Labor

20  Code section 1102.5.  <u>Shoemaker v. Myers</u>, 2 Cal. App. 4th 1407, 1425-26 (1992).  Failing to file a

21  claim in accordance with the Tort Claims Act deprives the court of jurisdiction to grant relief.

22  <u>Greyhound Lines, Inc. v. County of Santa Clara</u>, 187 Cal. App. 3d. 480, 487 (1986).  Neither Turan

23  Ramadan nor Patricia Ramadan filed a claim in accordance with the Tort Claims Act prior to

24  commencing this action.  UF ¶¶ 87-88.  Thus, defendants are entitled to summary judgment on

25  plaintiffs' claims of intentional infliction of emotional distress, negligent infliction of emotional

26  distress, loss of consortium, and the whistle-blower claim.

27

28

19

CONCLUSION

Defendants' motion for summary judgment is GRANTED.

The City of Napa's Water Division should not take comfort in this holding for it needs to tend to a substantial in-house remediation project. It is clear from the evidence in this case that the conduct of management and employees in the Division is deplorable, rendering its environment a veritable cesspool in which to work. No employee should be subject to the yelling, name calling and disrespect which contaminates this workplace. It is the responsibility of management to set the tone for supervisors and employees. It is their duty to flush out this behavioral effluent as much as they have a duty to remove pollutants from the water they treat. This court strongly urges that management establish and participate in programs for themselves and their employees that encourage a healthier work environment.

IT IS SO ORDERED.

Dated: June 6, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES

1.  Although the court only finds the one-day suspension to be an adverse employment action, defendants have articulated legitimate, nondiscriminatory reasons for the counseling memoranda and written reprimand.  Ramadan does not dispute the factual underpinnings of the memoranda and reprimand, including that (1) he failed to accurately account for time off from work on his time sheet; (2) his team completed the vent pipe project nine months after its deadline; (3) he exceeded his spending authority on the parking lot project; (4) he failed to report a sexual harassment complaint; (5) he failed to professionally prepare employee evaluations; and (5) he took a gallon of motor oil for personal use in violation of City policy.  UF ¶¶ 10-37.

2.  Recently, the Supreme Court has indicated its intention to strictly construe the timeliness requirements for discrimination suits, albeit in the context of discriminatory pay practices.  Ledbetter v. Goodyear Tire & Rubber Co., Inc., No. 05-1074,—S. Ct.— (May 29, 2007).